## Case No. 4,813.

FISH et al. v. The BLACK WARRIOR.

[N. Y. Times. Nov. 24, 1853.]

District Court, S. D. New York. 1853.

E. H. Owen and E. C. Benedict, for libellants.

Before BETTS, District Judge.

The following points were decided by THE COURT: First. That the steamship was running with no more than ordinary precautions, such as she used even in the daytime, and upon her own proofs, was in a thoroughfare of vessels; and she becomes thereby chargeable with the responsibility of proving that she could not have discovered the schooner sooner than she did, and after discovering her, could not, with the exercise of the utmost diligence, avoid her. Second. That the testimony is so balanced as to whether the schooner or the ship was inshore of the other, when the light of the schooner was first seen on the ship, that the court must consider that point undecided by the evidence. But it is proved that the schooner was running close-hauled on the wind, with her sails flat aft, and held that course until the collision, or so near it as to leave her without responsibility for any change of her direction, which might have occurred in the alarm and confusion incident to the inevitable striking together of the two. Third. That the testimony in respect to the state of the atmosphere, whether starlight and moonlight, or cloudy and dark, is so contradictory as to leave it doubtful if the schooner could be discerned a sufficient distance off, without her displaying a light, to be safely cleared by the steamer. Yet, taking the evidence from the ship as most

reliable in this particular, and that the night was so obscure and dark as to prevent the hull or sails of the schooner from being discovered more than a quarter of a mile from the steamer, the duty was imposed upon the latter to employ extraordinary diligence in increasing her look-outs, in placing her engine under strict supervision, and so manning the deck that the utmost promptitude might be secured in discovering danger and using the power of the ship to stop her headway and recede from it, or to be turned out of its way when it made its appearance, and that the steamer has failed to show any such preparations on her part. Fourth. That it was the right and duty of the schooner to hold the course she was running when the ship was known to be approaching her, and there is no satisfactory evidence on the part of the steamer that the obligation was not observed by the schooner. The ship had no knowledge of that course until the hull and sails of the schooner came in sight, and then she was heading south by east, and she is not charged by the proofs with deviating from it, other than being southeast at the moment of striking. Her general course was on the wind, and there is no proof that a variation from south and east to southeast, if made, disconcerted any manoeuvre of the steamer, or produced the collision; and the proof that the steamer turned off more east several points, and going in that new direction, then received the blow at right angles, would indicate that the schooner was only east of south, and would corroborate her evidence that she did not change her course until the instant of striking. Fifth. It is plain upon the proofs that the speed of the steamer would have enabled her, by starboarding or porting her helm, when the light of the schooner was first seen, to have gone safely clear of her; and that the collision was caused by allowing the steamer to approach too near her before taking the appropriate measures for keeping her out of the way. Sixth. That the steamer is responsible to the same degree for placing herself, unjustifiably, across the schooner's track, although she thus receives the blow from the latter, and does not inflict one by her direct motion, as she would do, if propelled upon the schooner. Seventh. That the collision cannot properly be adjudged an inevitable accident, because the steamer had notice by the schooner's light, in time enough to avoid her, and the collision was caused by the delay of the steamer to act upon that warning. Eighth. The court does not now consider and determine whether the loss of the vessel was a necessary consequence of the collision, or resulted from the blamable negligence or misconduct of her officers and crew. That particular will be matter of inquiry on the reference to ascertain the damages sustained.

Decree for libellants accordingly, with a reference.